*See Dissenting Opinion*

Filed 4/10/23  Walker v. Viveros CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOEL WALKER et al., | |
| Plaintiffs and Appellants, | E077215 |
| v. | (Super. Ct. No. CIVDS1817254) |
| JESSE VIVEROS, JR. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Reversed with directions.

Dordick Law, Gary A. Dordick and John Upton, for Plaintiffs and Appellants.

Winet Patrick Gayer Creighton & Hanes and Catherine A. Gayer, for Defendants and Respondents.

1

# I.

# INTRODUCTION

Joel Walker's wife, Teresa Walker, died from injuries she suffered when she fell while walking her dog on a sidewalk in the City of Victorville (the City). Walker sued the City and the owners of the property, Jesse Viveros, Jr., and Regina Mercedes Garcia (collectively, the Homeowners) abutting the sidewalk where Teresa fell. The trial court granted summary judgment to the City and the Homeowners on the ground that Joel failed to provide sufficient evidence that the sidewalk caused Teresa's fall. We reverse the judgment because a triable issue of fact exists as to what caused Teresa's fall.

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Joel and Teresa had a usual route for walking their two approximately 80-pound Boxer dogs. While walking their leashed dogs along that route one evening, Teresa fell and hit her head on the sidewalk in front of the Homeowners' house. At the time, Joel was walking one dog a foot or two in front of Teresa while she walked the other one. Teresa died from the injuries she sustained from the fall five days later.

Joel later sued the Homeowners for general negligence and negligent infliction of emotional distress (NIED).[1] The Homeowners moved for summary judgment on the ground that Teresa fell because she got tangled in her dog's leash, not because she tripped

---

[1] Joel also sued the City for negligence and NIED. Those claims are addressed in a separate appeal.

on the sidewalk.  Their motion relied mostly on deposition testimony from Joel and two people who assisted Teresa after she fell.

Joel testified that he did not see Teresa fall.  He explained that as he was walking one or two feet ahead of Teresa, he heard a thud, turned around, and saw Teresa on the ground crying and saying she hit her head.  Joel did not see Teresa entangled in a leash after her fall.  When Joel looked to see if anything could have caused Teresa's fall, he saw a rise in the sidewalk less than foot from where she was on the ground.

Although Teresa told Joel at the time of the incident and the days afterward that she tripped, she never told Joel what caused her to trip.  She never told Joel that she fell because she got tangled in the dog leash, and Joel never heard her tell anyone that was what caused her to trip and fall.  Joel thus "could only speculate" what caused Teresa to trip and fall.  But when asked what he thought Teresa tripped on, Joel replied that he "saw a raise in the concrete" near her.

Lisa Martinez, who lives near where Teresa fell, testified in her deposition that she saw Joel and Teresa walking their dogs while she was entertaining friends in her garage.  Shortly afterward, Martinez heard loud "cries."  Martinez went to the street and saw Teresa on the ground crying as if she had just fallen.  Martinez and her friend, Linda Carol Sullivan, went to help Teresa and Joel.  Teresa was crying and visibly upset while in a "crunched position" on the ground while Joel was trying to help and console her.  While Joel, Martinez, and Sullivan stood around Teresa, they discussed what had happened.  Teresa told Martinez that "the dogs may have tripped her or they had got

3

tangled up in" the dogs' leashes. When asked for further clarification on what Teresa told her, Martinez answered that Teresa said that "she thought the dogs may have tripped her." Teresa also said she had stubbed her toe and hit her head when she fell, but did not want medical attention. Martinez noticed that Teresa's toe was bleeding.

Sullivan testified that she was in Martinez's garage when she heard a woman screaming and crying. When she and Martinez approached Teresa and Joel, Sullivan asked her if Teresa needed help. As the four of them huddled about a foot apart from one another, Teresa "kept saying the dogs tangled her up." Sullivan was not certain, but recalled Teresa repeating three times that her dogs caused her to fall. Teresa never told Sullivan that she tripped on the sidewalk. Rather, "[h]er story was consistent that she got tangled up with the dogs and fell because of them."

The Homeowners also relied on deposition testimony from nurse Kent Cramer, R.N., who assisted Teresa during an air flight. Cramer testified that he prepared medical notes that stated Teresa, who was unconscious at all times around Cramer, "was walking her dog when she had a mechanical trip and fall on the dog leash." Cramer did not know where he received this information, but explained that he documented in his notes what he had learned per the emergency department staff and the husband.

In his opposition, Joel argued there was a triable issue of fact as to whether the sidewalk caused Teresa's fall. Joel emphasized that Teresa fell near a 1.375-inch displacement in the sidewalk while wearing open-toed flip-flops and one of her toes was bloody after the incident, although he could not recall which one. Joel also stated in a

4

declaration that he did not hear Teresa tell anyone, including Martinez and Sullivan, that she fell because of the dogs or their leashes and that he did not see Teresa entangled in a leash after the fall. To support his position that the displacement caused Teresa's fall, Joel submitted a declaration from Brad Avrit, an engineer, who concluded that the sidewalk displacement created a tripping hazard and caused Teresa's fall.[2]

Along with his opposition, Joel objected to Martinez and Sullivan's deposition testimony about what they claimed Teresa told them about what caused her fall. Joel argued their testimony was inadmissible on various grounds, including that it was inadmissible hearsay. Joel also objected to Cramer's testimony that his notes stated Teresa fell on her dog's leash. The Homeowners, in turn, objected to portions of Joel's declaration and the entirety of Avrit's declaration.[3]

The trial court overruled Joel's two objections to Martinez and Sullivan's testimony and sustained his objections to Cramer's testimony. The trial court, however, did not rule on the Homeowners' objections. The trial court then granted summary judgment to the Homeowners. The court found that the evidence was insufficient to create a triable issue of fact as to whether the sidewalk caused Teresa's injuries and that Joel's NIED claim failed because he did not witness Teresa's "fall contemporaneously with her ultimate injury." Joel timely appealed.

---

[2] Joel also supported his opposition with a declaration from arborist John Sevier, who claimed that a tree in the Homeowners' property caused the sidewalk displacement. His declaration is not relevant to the issues on appeal.

[3] The Homeowners also objected to Sevier's declaration.

5

III.

DISCUSSION

Joel contends the trial court erroneously granted the Homeowners' motion for summary judgment because there is a disputed issue of material fact as to whether the sidewalk caused Teresa's fall and he witnessed her fall even though he did not see it. We agree on both points.

1. *Evidentiary Issues*

We first address Joel's arguments about the trial court's rulings on the parties' objections. He argues the trial court should have excluded testimony from Martinez and Sullivan that Teresa told them she tripped on her dog or its leash (or the dogs and their leashes). He also argues the trial court should have excluded Cramer's testimony that he was told either by emergency department staff or Joel that Teresa tripped on her dog's leash.

As for Cramer's testimony, the trial court sustained Joel's objections. The trial court thus excluded Cramer's testimony that he learned either via emergency department staff or Joel that Teresa tripped on a dog leash. As a result, there is nothing in Cramer's admitted testimony about the cause of Teresa's fall.

As for Martinez and Sullivan's testimony, we need not decide whether the trial court properly overruled Joel's objections to their testimony. Even if it did, the trial court still erroneously granted the Homeowners' motion for summary judgment for the reasons discussed below.

6

The parties also dispute whether and to what extent we may consider the Homeowners' objections given that the trial court did not rule on them. When, as here, the trial court fails to rule on a party's objections but the party does not press the court for a ruling, we presume the court overruled the objections, which remain preserved for our review. (*Reid v. Google* (2010) 50 Cal.4th 512, 534.)

We assume without deciding that the trial court properly sustained the Homeowners' objections to Avrit's declaration because the trial court erred by granting the Homeowners' motion for summary judgment event without considering the declaration.

As for Joel's objected-to declaration, the Homeowners ask us to consider the trial court's evidentiary rulings on the City's motion for summary judgment. The Homeowners argue that those rulings apply equally here because they and the City objected to the same portions of Joel's declaration for the same reasons. We assume without deciding that the Homeowners are correct and thus will consider only the portions of Joel's declaration that the trial court considered after overruling the City's objections (objections 5 & 7). In particular, we will consider Joel's declaration testimony that (1) Teresa never told him that she got tangled in the dog leash or that she tripped because of it and (2) he did not see her entangled in a dog leash after her fall.

2. *Summary Judgment Principles and Standard of Review*

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant

7

satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.) As a result, the trial court may not grant a motion for summary judgment "based on inferences . . . if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code. Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

3. *Analysis*

To succeed on his negligence claim against the Homeowners, Joel must prove, among other things, that the sidewalk was the proximate cause of Teresa's injuries.[4] (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1104.) Causation is generally a "question of fact which cannot be resolved by summary judgment" and "may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.) "Causation must be established by nonspeculative evidence," (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 212), but "[c]ircumstantial evidence is just as good as direct evidence to create a triable issue of fact." (*Hussey-Head v. World Sav. & Loan Assn.* (2003) 111 Cal.App.4th 773, 780.)

The sidewalk was the proximate cause of Teresa's injuries if it was a "substantial factor" in causing them. (*Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 68.) The sidewalk was a substantial factor if it had "'an appreciable effect'" in causing Teresa's

---

[4] The Homeowners argued they were entitled to summary judgment because they did not have notice that the sidewalk was a dangerous condition and it did not cause her to fall in any event. The trial court found there was a triable issue of fact as to whether the Homeowners were aware that the sidewalk was a dangerous condition, but found that Joel could not prove causation. The Homeowners do not challenge the trial court's rulings. The Homeowners argue, however, that they had no obligation to repair the sidewalk in front of their home, which is owned by the City, and that they had no notice of the sidewalk's allegedly unsafe condition. But the trial court found there was a triable issue of fact on whether the Homeowners had notice, and the Homeowners did not argue in the trial court that they had no duty to repair the sidewalk, so we decline to consider the argument for the first time on appeal. (See *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.)

injuries. (*Ibid*.) "The substantial factor standard generally produces the same results as does the 'but for rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct. [Citations.] The substantial factor standard, however, has been embraced as a clearer rule of causation—one which subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969.)

The Homeowners' summary judgment motion rested largely on Martinez and Sullivan's deposition testimony that Teresa told them that her dog(s) caused her fall or she fell because she got tangled in the leash(es). But Martinez testified that Teresa said only that she thought she "*may* have" tripped because of the dogs, not that she certainly did. More to the point, Joel testified in his deposition that Teresa never told Martinez or Sullivan (or anyone else) that she fell because of her dogs or their leashes. What Teresa said about what caused her fall is therefore disputed and cannot prove as a matter of law that the sidewalk was not a substantial factor in causing her to fall.

The Homeowners also suggest there is no evidence that the sidewalk caused Teresa to fall because Joel did not see her fall and she did not tell him what caused her to fall. But circumstantial evidence and the reasonable inferences drawn from it can be sufficient to prove the cause of a plaintiff's fall, even if the plaintiff does not know what caused the fall or could not remember the fall. (*Kaney v. Custance*, *supra*, 74 Cal.App.5th at p. 217; *Sokolow v. City of Hope* (1953) 41 Cal.2d 668, 672 (*Sokolow*).)

10

Joel was walking one or two feet ahead of Teresa when she fell. When asked in his deposition if he saw what Teresa tripped on, Joel stated that he turned around and "saw a raise in the concrete" *less than a foot* from where she was on the ground, which suggests she tripped within feet of the sidewalk displacement. Joel also testified that Teresa was bleeding from a scraped foot after the incident and was not entangled in a leash after the fall. Martinez testified that Teresa said immediately after the fall that she had stubbed her toe and observed that one of Teresa's toes was bleeding.

On this disputed record, a jury could reasonably find that Teresa fell because she tripped on her dog (or dogs) or got tangled in the leash (or leashes), depending on whose testimony the jury credits. (See *Edwards v. Hall* (1991) 234 Cal.App.3d 886, 900 [jury resolves credibility determinations].) But a jury also could reasonably find that Teresa fell because she stubbed her toe on the 1.37-inch sidewalk displacement while wearing open-toed flip-flops. A jury likewise could reasonably find that Teresa fell because she stubbed her toe on the sidewalk *and* she tripped on her dog or its leash (or both dogs and their leashes). In other words, a triable issue of fact as to causation remains for a jury to resolve.

*Sokolow*, *supra*, 41 Cal.2d 668 supports our conclusion. The plaintiff there was waitressing when she tripped and fell in between two tables, causing her to lose consciousness. (*Id*. at p. 672.) She did not know what caused her to trip and no witness saw what she tripped on, although a colleague saw her fall. (*Id*. at pp. 671-672.) "The

11

record disclose[d] no other witnesses to the fall and no other evidence as to its cause." (*Id*. at p. 671.)

However, there was a gas pipe on the floor in between the tables where the plaintiff fell. (*Sokolow*, *supra*, 41 Cal.2d at p. 672.) Our Supreme Court held that "although no witness stated that plaintiff tripped over the gas pipe . . . an inference that it was such gas pipe that she tripped over is permissible." (*Id*. at p. 672.) The court reached this conclusion because the plaintiff "testified that she tripped over something; it was shown that the exposed gas pipe ran along the floor under the tables and between the ends of the tables; and it was further shown that it was between the ends of two of the tables that plaintiff tripped and fell." (*Ibid*.) The Supreme Court rejected the defendant's argument that the evidence that the gas pipe caused the plaintiff's fall was based on "guess, conjecture and speculation," and reversed a directed verdict in the defendant's favor because the "plaintiff's evidence was sufficient to support a verdict so far as concerns the question of proximate cause." (*Ibid*.)

So too here. As in *Sokolow*, there is only circumstantial evidence as to what caused Teresa's fall. No one saw what caused Teresa's fall or the plaintiff's fall in *Sokolow*, although a coworker saw the plaintiff falling. While the evidence on what Teresa may have tripped on is disputed and conflicting, it is undisputed that she tripped on something. Joel, who was about one or two feet away from Teresa when she fell, turned around and saw that the sidewalk displacement was less than a foot away from where she fell. Although the record is unclear as to where exactly Teresa fell, the only

12

evidence on the location of the *Sokolow* plaintiff's fall was that it occurred "in between the ends of the tables" and thus near the gas pipe, which created a reasonable inference that the pipe caused the fall. If the jury credits Joel's testimony, then a reasonable inference is that Teresa fell within feet of the displacement, which creates a reasonable inference that the displacement caused her fall under *Sokolow*.

Because a jury could reasonably find that the sidewalk was a substantial factor in causing Teresa's injuries, the trial court erred in granting summary judgment to the Homeowners. (See *Savaikie v. Kaiser Foundation Hospitals* (2020) 52 Cal.App.5th 223, 229-230 ["'Generally, when conflicting inferences can be reasonably drawn from the evidence, a triable issue of fact is deemed to exist.'"]; *Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 627; see also Code Civ. Proc., § 437c, subd. (c).)

A plaintiff may recover for NIED for witnessing injuring to a third party only if (1) the plaintiff is closely related to the victim, (2) the plaintiff is "present at the scene of the injury-producing event at the time it occurs *and is then aware that it is causing injury to the victim*," and (3) the plaintiff suffers serious emotional distress. (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 667-668.) The Homeowners contend Joel cannot satisfy the second element because he was unaware that Teresa purportedly tripped on the sidewalk when she fell. We agree.

*Fortman v. Forvaltningsbolaget Insulan AB* (2013) 212 Cal.App.4th 830, is instructive. There, the plaintiff witnessed her brother's death while they were scuba diving. (*Id*. at p. 832.) At the time of the accident, she thought her brother had suffered a heart attack, but she later learned that his equipment had malfunctioned and prevented him from getting enough air. (*Ibid*.) After an extensive survey of NIED cases in various contexts, the *Fortman* court concluded the plaintiff could not recover for NIED because she did not have a contemporaneous sensory awareness of the causal connection between the company's defective product and the resulting injury. (*Id*. at pp. 836-845.) Put another way, the plaintiff could not satisfy the second mandatory element of her NIED claim because she did not know that her brother's defective scuba equipment caused his death at the time of the accident. (*Id*. at p. 845.)

The same holds true here. Although Joel perceived that Teresa fell, he was unaware that the sidewalk may have caused her fall at the time. He could "only speculate" what happened because he did not see her fall and she never told him why she fell. It was not until well after Teresa's fall that Joel thought the sidewalk may have caused her to trip and fall. Joel thus cannot show, as he must, that he was contemporaneously aware that the homeowners' alleged negligence in not fixing the sidewalk displacement caused Teresa's fall and resulting injuries. (*Fortman v. Forvaltningsbolaget Insulan AB*, *supra*, 212 Cal.App.4th at p. 845.)[5]

---

[5] Joel conceded at oral argument that he could not succeed on his NIED claim.

IV.

DISPOSITION

The judgment is reversed.  The trial court is directed to enter an order denying the Homeowners' motion for summary adjudication on Joel's second cause of action and granting the motion on Joel's third cause of action.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

I concur:

<u>MILLER</u>
Acting P. J.

[*Joel Walker et al. v. Jesse Viveros, Jr. et al.*, E077215]

MENETREZ, J., Dissenting.

In moving for summary judgment, the defense argued that there was no evidence that the sidewalk displacement caused Mrs. Walker to fall. I agree.

No one saw Mrs. Walker fall. The only evidence of her own statements concerning the cause of the fall is that she said she tripped over the dogs or their leashes. Assuming for the sake of argument that there is conflicting evidence about whether she made those statements, there is still no evidence that she ever said that anything else caused her to fall.

Mrs. Walker's husband did not see her fall, and he said he could only "speculate" about what might have caused her to fall. He said that after she fell, he saw her on the ground "near" the sidewalk displacement, "less than a foot" away from it. But he never said where she was in relation to the displacement—behind it, in front of it, or next to it. There is no evidence that Mrs. Walker had even walked as far as the displacement before she fell. There is consequently no evidence that the displacement caused her to fall.

There is evidence that Mrs. Walker had a bloody toe after the fall, but that does not support a reasonable inference that the displacement caused her to fall. She could have tripped over the dogs or their leashes or her own feet (she was wearing flip-flops) and injured her toe in the process of falling.

*Sokolow v. City of Hope* (*Corp.*) (1953) 41 Cal.2d 668 is distinguishable. In that case, the victim said that she tripped over something, and (1) there was evidence that she

1

tripped between two tables, (2) there was evidence that there was a gas line on the ground between those tables, and (3) there was no evidence of any other potential tripping hazard between those tables. (*Id.* at pp. 670-671.) The evidence therefore supported a reasonable inference that she tripped over the gas line. In the case before us, there is evidence of other potential tripping hazards—namely, the dogs and their leashes—and no evidence that Mrs. Walker tripped after, rather than before, reaching the sidewalk displacement. *Sokolow* consequently is not controlling.

It is, of course, possible that the displacement caused Mrs. Walker to fall. But the present record contains no evidence that it did. On this record, a finding that she tripped over the displacement would be based on nothing but speculation.

For all of the foregoing reasons, I believe that the trial court correctly granted summary judgment for the defense. I therefore respectfully dissent.

MENETREZ
J.

2